UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

Able Masonry Development Co.,
individually and on behalf of a class of
persons similarly situated,

    *Plaintiff,*

v.

Hastings Mutual Insurance Company, *et
al.,*

    *Defendants.*

No. 24 CV 1338

Judge Lindsay C. Jenkins

## MEMORANDUM OPINION AND ORDER

Able Masonry Development Co. sued its insurer, Hastings Mutual Insurance Company,[1] and the insurer's broker, several entities that the Court refers to as Brown & Brown, claiming that Able Masonry had been overcharged for insurance premiums. [Dkt. 1-1.] Hastings removed the case to federal court [Dkt. 1] and moves to dismiss some of the claims against it. [Dkt. 21.] The removal dragged Brown & Brown into federal court as well, and it moves to dismiss on jurisdictional grounds. [Dkt. 20.] Hastings's motion is granted in part and denied in part; Brown & Brown's is denied.[2]

## I.    Background

Able Masonry, an Illinois corporation, is a masonry contractor. [Dkt. 1-1 ¶¶ 1, 4.] Between 2019 and 2023, it purchased worker's compensation insurance from

---

[1]    The Clerk is directed to fix the misspelled word "Compnay" in the caption.

[2]    Able Masonry filed its response brief on April 23, 2024. Hastings has not filed a reply brief, nor did it propose a briefing schedule, request the Court set a deadline, or follow Brown & Brown's briefing schedule. If Hastings wished to file a reply, it should have so indicated by now, so the Court rules based on its opening brief and Able Masonry's response.

    Separately, Able Masonry's motion for leave to file a surreply in opposition to Brown & Brown's motion to dismiss [Dkt. 30] is granted.

Hastings, a Michigan corporation. [*Id.* ¶¶ 5, 28–30.] Brown & Brown, a broker, facilitated the transaction and received a portion of the premiums as a fee. [*Id.* ¶¶ 31–32, 92.] The policy included a "terrorism premium" under the Terrorism Risk Insurance Program Reauthorization Act of 2019. [*Id.* ¶ 37.] Able Masonry alleges that Defendants represented that the terrorism premium would total about $489 and be paid annually, but the $489 premium was actually assessed monthly, resulting in an overpayment of more than $5,000 per year. [*Id.* ¶¶ 38, 44, 52.]

Able Masonry filed a 14-count putative class action in Illinois state court in January 2024 on behalf of itself and others that had been overcharged terrorism premiums. [Dkt. 1-1.] It named Hastings and three Brown & Brown entities as Defendants. [*Id.* ¶¶ 8–17.][3] Counts I, II, VI, and VII were individual claims against Hastings for breach of contract, breach of fiduciary duty, consumer fraud, and unjust enrichment, respectively. [*Id.* ¶¶ 71–88, 116–38.] Counts VIII, IX, XIII, and XIV sought classwide relief from Hastings on the same legal theories. [*Id.* ¶¶ 139–58, 189–213.] The remaining claims alleged that each Brown & Brown entity breached a

---

[3]    The citizenship of the Brown & Brown entities does not impact the Court's jurisdiction because 28 U.S.C. § 1332(d)(2)(A) requires only be minimal diversity, as long as there is more than $5 million in controversy in the aggregate, exclusive of interest and costs. *See Sudholt v. Country Mut. Ins. Co.*, 83 F.4th 621, 624 (7th Cir. 2024). Able Masonry is an Illinois citizen, and Hastings is a Michigan citizen, so minimal diversity is present. No party disputes that more than $5 million is in controversy. Viewing the allegations in the light most favorable to finding jurisdiction, *see Sykes v. Cook Inc.*, 72 F.4th 195, 206 (7th Cir. 2023), Able Masonry's allegations and claims for punitive damages and attorney's fees on behalf of Illinois and nationwide classes satisfy the amount in controversy requirement. [*See* Dkt. 1-1 ¶¶ 58–70.] Further, because Hastings, the primary Defendant, is not a citizen of Illinois, and no party has suggested that more than two-thirds of the members of all Plaintiff classes are citizens of Illinois, the abstention provisions in § 1332(d)(3) and (4) do not apply.

fiduciary duty to Able Masonry and sought individual (Counts III–V) and classwide (Counts X–XII) relief. [*Id.* ¶¶ 89–115, 159–88.]

Able Masonry served Hastings on January 17, 2024. [*See* Dkt. 1 at 2.] Brown & Brown entered an appearance on February 9, 2024 and filed a notice that it had tendered a check for $1,612.30 to the court, which it asserted constituted full payment of the damages Able Masonry claimed against it. [Dkt. 20 at 2.] Several hours later, Able Masonry filed a motion for class certification. [*Id.* at 3.] On February 16, 2024, Hastings unilaterally removed the case to this Court. [Dkt. 1.] *See* 28 U.S.C. § 1453(b) ("A class action … may be removed by any defendant without the consent of all defendants."). Hastings filed a partial motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. [Dkt. 21.] Brown & Brown moved to dismiss for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1). [Dkt. 20.]

## II. Legal Standard

A motion to dismiss pursuant to Rule 12(b)(1) challenges the Court's subject-matter jurisdiction, whereas a motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the plaintiff's claims. In both cases, the Court takes well-pleaded factual allegations as true and draws reasonable inferences in favor of the plaintiff, *Choice v. Kohn L. Firm, S.C.*, 77 F.4th 636, 638 (7th Cir. 2023); *Reardon v. Danley*, 74 F.4th 825, 826–27 (7th Cir. 2023), but it need not accept statements of law or conclusory factual allegations as true, *Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 586 (7th Cir. 2021). To survive dismissal, a claim must be "plausible, rather than merely speculative," which requires a plaintiff to allege "just enough details about the subject matter of the case

to present a story that holds together." *Russell v. Zimmer, Inc.*, 82 F.4th 564, 570–71 (7th Cir. 2023) (cleaned up).

### III.  Brown & Brown's Motion

Brown & Brown moves to dismiss all claims against it for lack of subject-matter jurisdiction. [Dkt. 20.] Fed. R. Civ. P. 12(b)(1). It does not contest Hastings's removal per se; instead, it argues that the claims against it had become moot when Hastings filed the notice of removal, so the Court lacks jurisdiction over those claims. [Dkt. 27 at 5–6.][4] In Brown & Brown's view, before the case was removed, Brown & Brown made a valid tender under Illinois law, "providing full relief to Able on its claims against Brown & Brown," and mooting the controversy between them. [Dkt. 20 at 4 (citation omitted).] Able Masonry responds that tender did not fully satisfy its claims against Brown & Brown, so those claims are not moot. [Dkt. 25 at 10–12.] The Court agrees with Able Masonry that its claims against Brown & Brown remain live.

### A.  The *Barber* Rule

Illinois courts recognize what they call the "*Barber* rule," whereby a defendant can admit liability and tender the full amount of relief a plaintiff seeks, extinguishing the controversy between them. *See Barber v. Am. Airlines, Inc.*, 948 N.E.2d 1042 (Ill. 2011). As the Court understands it, the primary use for the *Barber* rule is to moot a putative class representative's claim before he moves for class certification. *See id.* at 1045–46. The Supreme Court of Illinois recently addressed the differences between a

---

[4]  Brown & Brown argues that the proper course is for the Court to dismiss these claims, rather than remand them. [Dkt. 27 at 6, 16.] The Court concludes that Able Masonry's claims against Brown & Brown are not moot, so it does not address the dismiss-or-remand issue.

tender and its closest federal cousin, an offer of judgment under Federal Rule of Civil Procedure 68. *Joiner v. SVM Mgmt., LLC*, 161 N.E.3d 923 (Ill. 2020).

*Joiner* began by reiterating the *Barber* rule: "when a defendant tenders the full amount requested by a plaintiff purporting to represent a class before the named plaintiff files a class-certification motion, the plaintiff's claim becomes moot." *Id.* at 929 (citations omitted). It distinguished a tender from a Rule 68 offer of judgment: "An offer is 'a statement that one is willing to do something for another person or to give that person something.' A tender, however, 'is defined as the actual proffer of money, as distinguished from the mere proposal or proposition to proffer it.'" *Id.* at 934 (cleaned up) (first quoting Black's Law Dictionary (11th ed. 2019); and then quoting *McLean v. Yost*, 652 N.E.2d 426, 427 (Ill. 1995)). *Joiner* went on to state that "[t]he federal rule expressly contemplates a plaintiff's choice to accept or decline such an offer. Our rule does not." *Id.* (citation omitted). Thus, unlike a Rule 68 offer, which if unaccepted has no effect, *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156 (2016); *Chapman v. First Index, Inc.*, 796 F.3d 783, 786–87 (7th Cir. 2015), a valid tender moots the case as a matter of Illinois law, *Joiner*, 161 N.E.3d at 935–36.

The requirements for a proper tender are specific: "A tender … is only effective if it is for the entire amount owed. The defendant must actually produce the tender; a mere offer or promise is insufficient. In making an effective tender, the defendant admits liability." *Id.* at 935 (citations omitted). *Joiner* also clarified several additional points. First, if a statute permits the recovery of costs and reasonable attorney's fees, the defendant may effect a tender by stipulating that it will pay fees and costs in an

amount to be determined by the court. *Id.* at 937–38. Second, the best practice is to deposit the tender with the court. *Id.* at 938. Third, a defendant need not tender relief for every claim against it; a partial tender may be effective as to specific claims. *Id.* at 937. A tender that meets these requirements renders the plaintiff's claim moot if he has not yet moved for class certification. *Id.* at 936 ("An issue is moot if no actual controversy exists. When a defendant admits liability and provides the plaintiff with all relief requested—as she does with a tender—no controversy exists." (cleaned up)).

## B. The Effect of a Tender on Federal Jurisdiction

The parties disagree about whether an effective tender, which moots a claim under Illinois law, also means that there is no federal subject-matter jurisdiction. Federal courts' subject-matter jurisdiction extends only to "cases" and "controversies" within the meaning of Article III of the Constitution. *See, e.g.*, *Parents Protecting Our Children, UA v. Eau Claire Area Sch. Dist.*, 95 F.4th 501, 504–05 (7th Cir. 2024). One facet of Article III jurisdiction is standing: to proceed in federal court, a plaintiff "must have suffered (1) a concrete and particularized injury that is actual or imminent, (2) traceable to the defendant's conduct, and (3) can be redressed by judicial relief." *Hero v. Lake Cnty. Elec. Bd.*, 42 F.4th 768, 772 (7th Cir. 2022) (citations omitted). Further, "[a]n actual controversy must exist at every phase of the litigation. … A claim becomes moot when it is impossible for a court to grant any effectual relief. If this occurs, federal courts lose subject matter jurisdiction over the case." *Gill v. Linnabary*, 63 F.4th 609, 612–13 (7th Cir. 2023) (cleaned up).

Able Masonry contends that a "case or controversy" is broader under federal law than Illinois law, so while a tender moots a claim under Illinois law, the claim

may nevertheless remain live for purposes of federal jurisdiction. [Dkt. 25 at 9–10.] It cites cases where the mooting of a class representative's personal claim did not moot the entire class action. [*Id.*] *See U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 397–401 (1980) (discussing this issue and citing cases). Cases about the consequences of an individual plaintiff's claim becoming moot while a federal class action is pending do not control here, where the question is whether the claims against Able Masonry were moot when Hastings purported to remove them to this Court.

A defendant may remove an action only if there is original federal jurisdiction at the time of removal, and the Court must remand claims over which it lacks subject-matter jurisdiction. 28 U.S.C. § 1441(a), (c); *Bergquist v. Mann Bracken, LLP*, 592 F.3d 816, 819 (7th Cir. 2010). An individual plaintiff whose claim is moot cannot represent a class, and he has a "concrete stake" that supports federal jurisdiction only if a class has been certified or a motion for class certification has been denied. *Collins v. Village of Palatine*, 875 F.3d 839, 846 (7th Cir. 2017) ("When the plaintiff's own claim is dismissed, he can no longer be the class representative. At that point either another class representative must be found or the suit is kaput." (cleaned up)); *Culver v. City of Milwaukee*, 277 F.3d 908, 910 (7th Cir. 2002) ("A properly certified class action survives the mootness of the original representative's claims, but an individual action must be dismissed in identical circumstances, and this suit became an individual action when the class was decertified. The would-be class representative has standing to appeal, however, [under *Geraghty*] ...." (citations omitted)). But a plaintiff cannot rely on a mootness exception if there was not federal subject-matter

jurisdiction in the first place. *See Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 191 (2000) ("[I]f a plaintiff lacks standing at the time the action commences, the fact that the dispute is capable of repetition yet evading review will not entitle the complainant to a federal judicial forum." (citation omitted)).

The Court agrees with Brown & Brown that if there is an effective tender under Illinois law, it means there is not a live controversy for Article III purposes. [Dkt. 27 at 7–10.] As the Supreme Court of Illinois explained in *Joiner*, "[a]n issue is moot if no actual controversy exists. When a defendant admits liability and provides the plaintiff with all relief requested—as she does with a tender—no controversy exists." 161 N.E.3d at 936 (cleaned up). This definition of mootness tracks the federal definition. When a defendant "provides the plaintiff with all relief requested," *id.*, it becomes "impossible for a court to grant any effectual relief," and there is no federal subject-matter jurisdiction. *Gill*, 63 F.4th at 613 (cleaned up); *see also Hero*, 42 F.4th at 772 (noting that a judicially redressable injury is essential for standing).

Able Masonry emphasizes that a live controversy under Article III exists "[a]s long as the parties have parties have a concrete interest, no matter of how small, in the outcome of the litigation." [Dkt. 25 at 9 (quoting *Chafin v. Chafin*, 568 U.S. 165, 172 (2013)).] This is true, but a tender causes the plaintiff loses his concrete stake in the case because he has received complete relief. *Joiner*, 161 N.E.3d at 936. The Court explained above why the prospect of certifying a class does not give a plaintiff whose individual claim is moot a personal stake in the outcome unless a motion for class certification has been denied. *See Collins*, 875 F.3d at 846; *Culver*, 277 F.3d at 910.

Nor does the fact that the court may need to hold a hearing and award costs and reasonable attorney's fees, *see Joiner*, 161 N.E.3d at 937–38, give a plaintiff a concrete personal stake in the outcome of the suit. Seeking attorney's fees and costs incurred in bringing a suit is insufficient to confer standing. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 107 (1998) ("The litigation must give the plaintiff some other benefit besides reimbursement of costs that are a byproduct of the litigation itself. An interest in attorney's fees is insufficient to create an Article III case or controversy where none exists on the merits of the underlying claim." (cleaned up)); *Choice*, 77 F.4th at 639 ("Choice's decisions to hire an attorney and pay an appearance fee are insufficient to establish standing." (citations omitted)). It stands to reason that a case may be moot even if a request for fees and costs remains pending. *Cf. Wojan v. Gen. Motors Corp.*, 851 F.2d 969, 971–73 (7th Cir. 1988) (explaining that a district court has the power to sanction litigants even if it lacks subject-matter jurisdiction over the underlying case). Thus, when a defendant moots a claim under Illinois law through a tender, the plaintiff loses a personal stake for purposes of federal jurisdiction, even though the court may award him fees and costs.

Finally, Able Masonry argues that the Seventh Circuit has rejected the notion that a tender moots a claim. [Dkt. 25 at 12–13.] The cases it cites, however, concern offers of judgment under Rule 68, *Chapman*, 796 F.3d at 786–87, and deposits to the court under Rule 67, *see Fulton Dental, LLC v. Bisco, Inc.*, 860 F.3d 541, 543–46 (7th Cir. 2017). The Supreme Court of Illinois holds that a tender is not equivalent to a Rule 68 offer of judgment and that depositing a tender with the court does moot a

plaintiff's claim. *Joiner*, 161 N.E.3d at 935–36, 938. While a tender is a procedural device not available in federal court, *cf.* Fed. R. Civ. P. 67–68, when performed in Illinois court, it has substantive effect. [Dkt. 20 at 6–7; Dkt. 27 at 12.] *See Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.*, 536 F.3d 663, 670 (7th Cir. 2008) ("[A]s a general matter, a district court exercising jurisdiction because the parties are of diverse citizenship must apply state substantive law and federal procedural law." (citing *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938))).

The Court holds that a case that becomes moot because the defendant tendered complete relief to the plaintiff under *Joiner* means that there is not a live controversy for purposes of federal subject-matter jurisdiction.

## C. Brown & Brown's Tender

That brings the Court to the issue of whether Brown & Brown effected a proper tender under the *Barber* rule. If it did, then when Hastings removed this action to federal court, there was no Article III controversy, and the Court lacks subject-matter jurisdiction over the claims against Brown & Brown. If, however, the tender was not proper, then there remains a live controversy, and the Court has jurisdiction.

On February 9, 2024, Brown & Brown filed a notice stating that it tendered the amount of $1,612.30 in full satisfaction of Able Masonry's clam against it and that it would pay costs and reasonable attorney's fees determined by the court. [Dkt. 20 at 2.] The $1,612.30 figure equaled Brown & Brown's 10% fee of the $16,123 that Able Masonry had been overcharged for the terrorism premium. [*Id.*] Brown & Brown delivered a check for that amount payable to the court to the court's trust account, the best practice under *Joiner*. [*Id.*] Brown & Brown argues that this tender satisfied

10

the requirements of *Joiner* and rendered Able Masonry's claims against it moot, so those claims were not properly removed. [*Id.* at 4–7.]

Able Masonry argues that its claims are not moot because the tender was not for the full value of its claims against Brown & Brown. [Dkt. 25 at 11–12.] It seeks a refund of "all premiums overcharged," not just Brown & Brown's commission, as well as punitive damages. [*Id.*; *see, e.g.*, Dkt. 1-1 at 15.] Brown & Brown responds that Able Masonry brings claims under the Illinois Insurance Placement Act (the "Act"), 735 ILCS 5/2-2201, which limits Brown & Brown's potential liability to the premiums that *it* wrongfully withheld—its 10% commission, not the full overpayment that Able Masonry paid to Hastings. [Dkt. 27 at 10–12.]

The Court reads the Act differently than Brown & Brown. Able Masonry does not dispute that Brown & Brown received 10% of the premiums [Dkt. 25 at 10–12], but the Act seems to address when an insurance broker may be liable for breach of fiduciary duty, not the amount of potential liability:

> No cause of action brought … against any insurance producer,[5] … shall subject the insurance producer … to civil liability under standards governing the conduct of a fiduciary or a fiduciary relationship except when the conduct upon which the cause of action is based involves the wrongful retention or misappropriation by the insurance producer … of any money that was received as premiums, as a premium deposit, or as payment of a claim.

735 ILCS 5/2-2201(b). The Act provides that an insurance broker is not liable as a fiduciary unless it wrongfully retained or misappropriated funds, but Brown & Brown

---

[5]    An insurance broker is an "insurance producer." *Skaperdas v. Country Cas. Ins. Co.*, 28 N.E.3d 747, 752–53 (Ill. 2015).

cites no authority that holds that a fiduciary's liability is limited to a refund of the fee the fiduciary received. [*See* Dkt. 27 at 10–12.]

But even if the maximum refund Able Masonry may recover is the 10% Brown & Brown received, Able Masonry's claims are not moot. It seeks punitive damages, and Illinois law permits punitive damages for breach of fiduciary duty, at least under some circumstances. *In re Est. of Wernick*, 535 N.E.2d 876, 887 (Ill. 1989) ("We agree that a breach of a fiduciary duty may warrant the imposition of punitive damages. … The ultimate determination, however, is dependent upon the specific facts of the case involved."). Recent Illinois caselaw suggests that punitive damages may be available in a breach of fiduciary duty claim brought under the Act. *See County of Cook v. USI Ins. Servs. Corp. of Ill., Inc.*, 2020 IL App (1st) 181889-U, ¶¶ 20, 96, 181–89 (noting that the plaintiff sought punitive damages for breach of fiduciary duty under the Act but affirming judgment in favor of the defendant on that claim).

Brown & Brown does not argue the punitive damages point in its reply brief, but even if it could successfully argue that Able Masonry's allegations cannot support the imposition of punitive damages, it would still not moot Able Masonry's claim. A proper tender under Illinois law requires the defendant to "admit[ ] liability and provide[ ] the plaintiff with all relief requested." *Joiner*, 161 N.E.3d at 936. Brown & Brown has not admitted liability with respect to punitive damages, and it has not provided Able Masonry with all the relief it has requested. [*See also* Dkt. 30-1 at 1–2 (arguing that the tender was not effective because Brown & Brown's reply brief contests the amount of its liability).] The claims against Brown & Brown remained

12

live for purposes of federal subject-matter jurisdiction after the tender, and those claims were properly removed to this Court. Brown & Brown's motion to dismiss for lack of subject-matter jurisdiction is therefore denied.

## IV. Hastings's Motion

Hastings moves to dismiss all claims against it besides Count I, the individual breach of contract claim, for failure to state a claim. [Dkt. 21.] Fed. R. Civ. P. 12(b)(6). Able Masonry abandons Counts II, VII, IX, and XIV, the breach of fiduciary duty and unjust enrichment claims, but argues that Counts VI and XIII (its Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") claims) and Count VIII (its classwide breach of contract claim) are adequately pleaded. [Dkt. 26 at 2 & n.1.]

### A. ICFA Claims

Counts VI and XIII assert individual and class claims for violations of the ICFA. Hastings argues that these claims fail as a matter of law and that the statute of limitations expired before Able Masonry sued. [Dkt. 21 at 5–8.]

#### 1. The Merits

Hastings argues that "Illinois enacted the [ICFA] in 1965 primarily for the purpose of defining and prohibiting deceptive trade practices." [*Id.* at 6 (citations omitted).] "By the very nature of these two entities, Hastings … cannot interfere with the promotion or conduct of [Able Masonry's] business as [it] is not in the masonry or commercial contracting market," and Able Masonry "is not in the insurance industry." [*Id.*] Hastings cites *Chabraja v. Avis Rent A Car System, Inc.*, 549 N.E.2d 872, 876 (Ill. App. Ct. 1989), for the proposition that "the prefatory notes to the statute

specifically refer to deceptive conduct that unreasonably interferes with another in the promotion and conduct of his or her business." [Dkt. 21 at 6 (cleaned up).]

As Able Masonry notes, however, the portion of *Chabraja* that Hastings cites addressed the purpose of the Illinois Deceptive Trade Practices Act, not the ICFA; the ICFA is broader and protects "consumers." [Dkt. 26 at 3–4.] *See Chabraja*, 549 N.E.2d at 876 ("It should be noted that the Illinois Deceptive Trade Practices Act was enacted to prohibit unfair competition and was not intended to be a consumer protection statute. The acts which the statute means to curtail are 'deceptive conduct constituting unreasonable interference with another's promotion and conduct of business.' 'Consumer' is not included in the definitions for the Illinois Deceptive Trade Practices Act as it is in those for the Illinois Consumer Fraud and Deceptive Practices Act." (cleaned up)). A corporation can be a "consumer" for purposes of ICFA protection [*see* Dkt. 26 at 4 (citing authority)], and because Hastings has not argued that Able Masonry's allegations are insufficient [*see id.* at 4 n.2], the Court holds that the Complaint states viable ICFA claims.

### 2. Timeliness

Turning to the statute of limitations question, Hastings argues that the ICFA claim accrued in 2019, when the alleged violations began, and Able Masonry was on notice of the violations no later than 2020, so the three-year statute of limitations ran before Able Masonry filed suit in 2024. [Dkt. 20 at 6–8.] Able Masonry agrees that a three-year statute of limitations applies to ICFA claims and that the limitations period begins to run when the plaintiff is injured. [Dkt. 26 at 4–5.] It argues, however, that Hastings's conduct constituted "a continued repeated injury," so under the

14

"continuing violation doctrine," "the limitation period does not begin until the date of the last injury or when the tortious act ceased." [*Id.* at 5. (cleaned up).]

The Court disagrees that Hastings's conduct constitutes a single continuing tort for purposes of the statute of limitations. In *Rodrigue v. Olin Employees Credit Union*, the Seventh Circuit analyzed how it believed the Supreme Court of Illinois would apply the continuing violation rule to the conversion of multiple checks:

> In concluding that the conversion of all 269 checks should be treated as a single, continuing wrong, the district court relied principally on the Illinois Appellate Court's opinion in *Field v. First Nat'l Bank of Harrisburg*, 619 N.E.2d 1296 [(Ill. App. Ct. 1993)]. …
>
> *Field* plainly supports the district court's conclusion as to the statute of limitations; but looking to the Illinois Supreme Court's own cases concerning the continuing violation rule, we are convinced that the Court would not apply that rule to a cause of action for the conversion of negotiable instruments. …
>
> Where a cause of action arises not from individually identifiable wrongs but rather from a series of acts considered collectively, the Illinois Supreme Court has deemed application of the continuing violation rule appropriate. For example, in *Cunningham v. Huffman*, 609 N.E.2d 321 (Ill. 1993), the Court held that the continuing violation rule tolled a statute of repose governing medical malpractice claims, where the plaintiff's claim of malpractice arose from a continuous, related, unbroken course of negligent treatment. … Likewise, in *Feltmeier v. Feltmeier*, 798 N.E.2d 75 (Ill. 2003), the Court concluded that the continuing violation rule applied to an abused wife's cause of action for intentional infliction of emotional distress by her husband, where the cause of action was based on a pattern of abuse that took place over the course of more than 11 years. …
>
> By contrast, as the Court's opinion in [*Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 770 N.E.2d 177, 191 (Ill. 2002),] reveals, the continuing violation rule does not apply to a series of discrete acts, each of which is independently actionable, even if those acts form an overall pattern of wrongdoing. In *Belleville Toyota*, an automobile dealership sued its wholesale distributor and importer, alleging breach of dealer agreements and numerous violations of the Motor Vehicle Franchise Act … in the defendants' allocation of automobiles to plaintiff over the

> course of almost 10 years. … The Illinois Supreme Court … conclude[d] that the continuing violation rule was inapplicable. The Court could not accept the notion that the defendants' automobile allocations, each of which was "the result of discrete decisions by defendants … constituted one, continuing, unbroken, decade-long violation …." "Rather, each allocation constituted a separate violation … supporting a separate cause of action." Thus, the nature of the alleged wrong did not justify the application of the continuing violation rule. …
>
> *Belleville Toyota* leads us to believe that the continuing violation rule should not apply here, either. Unlike a cause of action for medical malpractice based on a course of negligent treatment with cumulative effects, or a cause of action for the intentional infliction of emotional distress arising from a course of tortious acts considered as a whole, Rodrigue's claim for conversion does not depend on the cumulative nature of either Wiltshire's or Olin's acts. Rather, a cause of action for conversion arose each time Wiltshire cashed or deposited one of the checks she had embezzled. …
>
> We recognize that the Supreme Court in *Feltmeier* cited *Field* as an example of a case that treated a series of repeated or ongoing acts as "a continuing whole for prescriptive purposes." But the Court did so for illustrative purposes only.

406 F.3d 434, 441–44 (7th Cir. 2005) (cleaned up); *see Sanchelima Int'l, Inc. v. Walker Stainless Equip. Co., LLC*, 920 F.3d 1141, 1145–46 (7th Cir. 2019) ("Federal courts sitting in diversity can decide cases involving unresolved issues of state law by predicting how the relevant state court would rule." (citation omitted)).

No subsequent Illinois decision has called *Rodrigue*'s analysis into question. *Cf. Barnes v. Anyanwu*, 391 F. App'x 549, 553 (7th Cir. 2010) (per curiam) (Circuit precedent on a state law issue "should be followed, unless there is a subsequent state court decision or statutory amendment that renders that decision clearly wrong." (citation omitted)). Quite the opposite. In *Kidney Cancer Association v. North Shore Community Bank & Trust Co.*, the Illinois Appellate Court stated that *Rodrigue* was "persuasive" and agreed that the Supreme Court of Illinois did not implicitly adopt

16

*Field* as the rule for when the continuing violation doctrine applies. 869 N.E.2d 186, 193–94 (Ill. App. Ct. 2007); *see also Breitweiser v. Highland Cap. Brokerage, Inc.*, 2019 IL App (1st) 181898-U, ¶¶ 21–23 (following *Kidney Cancer* and holding that a series of independent, improper commission payments were not a single continuing violation); *Hullverson & Hullverson, L.C. v. Hullverson*, 2016 IL App (5th) 150226-U, ¶ 72 (quoting *Rodrigue* while articulating the continuing violation rule). *Rodrigue* appears to have gotten Illinois law right.

Hastings allegedly committed several discrete tortious acts that formed a pattern of wrongdoing, not a single continuing violation. *See Rodrigue*, 406 F.3d at 443. The continuing violation doctrine applies when the defendant engages in a single "course of conduct … with cumulative effects" or the plaintiff's claim "aris[es] from a course of tortious acts considered as a whole." *Id*. That is not the case here. Hastings's acts may have "form[ed] an overall pattern of wrongdoing," but each time Hastings overbilled for the terrorism premium was "independently actionable" and gave Able Masonry a complete cause of action. *See id.* ("Whether Wiltshire had negotiated one check or 1000, Rodrigue had a valid cause of action for conversion; nothing about the repeated or ongoing nature of Wiltshire's conduct affected the nature or validity of Rodrigue's suit, beyond increasing her damages."). The continuing violation rule does not apply to Hastings's alleged series of discrete, independently actionable violations.

Even so, dismissal of these claims is not proper for two reasons. First, at least some ICFA claims are timely. Able Masonry alleges that it overpaid for the terrorism premium between 2019 and 2023, and it sued on January 5, 2024. [Dkt. 1 at 5; Dkt.

17

1-1 ¶ 30.] Because its claims are independently actionable, any claim that accrued on or after January 5, 2021 is timely, even if the limitations period for some claims has expired. *See Rodrigue*, 406 F.3d at 443. [*Contra* Dkt. 21 at 7–8 (arguing that Able Masonry's claims accrued in 2019 or 2020, so all its ICFA claims are time-barred).]

Second, factual disputes preclude conclusive resolution of which if any portion of Able Masonry's ICFA claims are untimely. "Dismissing a complaint as untimely at the pleading stage is an unusual step, since a complaint need not anticipate and overcome affirmative defenses, such as the statute of limitations. Further, these defenses typically turn on facts not before the court at that stage in the proceedings." *Sidney Hillman Health Ctr. of Rochester v. Abbott Lab'ys, Inc.*, 782 F.3d 922, 928 (7th Cir. 2015) (cleaned up). Possible factual disputes include: (1) when Hastings charged Able Masonry and it paid, which might affect some claims' timeliness; (2) whether all payments pursuant to a contract can be treated as a continuing violation, even though all payments across all contracts cannot be; and (3) whether the discovery rule tolled the statute of limitations. These disputes may or may not arise or prove dispositive, but they preclude dismissing the ICFA claims in full or in part at this stage. *See id.* (explaining that dismissing a complaint at the pleading stage based on a statute of limitations defense "is appropriate only where the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense" (cleaned up)).

*     *     *

Hastings's motion to dismiss Counts VI and XIV is denied.

### B.    Classwide Breach of Contract

Next, Hastings argues that Count VIII, the breach of contract claim on behalf of a class, fails as a matter of law. [Dkt. 21 at 11–14.] To certify a class action under Rule 23, the prospective class must satisfy the numerosity, commonality, typicality, and adequacy of representation requirements of Rule 23(a). *Eddlemon v. Bradley Univ.*, 65 F.4th 335, 338 (7th Cir. 2023). The class must also meet the requirements of the relevant provision of Rule 23(b), here that common questions of law or fact predominate over individual inquiries and that class treatment is the superior method of resolving the controversy. *Id.*; *see* Fed. R. Civ. P. 23(b)(3).

Hastings argues that commonality and predominance are absent. [Dkt. 12 at 12.] It cites cases holding that class certification is improper where the "putative class includes members insured under policies that are materially different." [*Id.*] But most of the cases Hastings cites arose at the class certification stage, *see Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 340–41 (7th Cir. 1997) (vacating denial of motion for class certification); *Brousard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331, 334 (4th Cir. 1998) (reversing class certification); *Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 824 (Ill. App. Ct. 2005) (reversing class certification), and the cases that arose at the pleading stage did not feature breach of contract claims, *see Hagerty v. Gen. Motors Corp.*, 319 N.E.2d 5, 7 (Ill. 1974) (tax); *Goetz v. Village of Hoffman Estates*, 378 N.E.2d 1276, 1278 (Ill. App. Ct. 1978) (negligence). This distinction is meaningful. The Rule 23 requirements are not pleading requirements; a plaintiff must show with evidence that class certification is proper. *Eddlemon* 65 F.4th at 338–

19

39. The fact that a certain record could not support a classwide breach of contract claim does not mean that Able Masonry cannot properly plead such a claim.

Able Masonry has done so. [*See* Dkt. 26 at 9–10.] The common questions of law and fact it alleges will arise include whether Hastings overcharged class members for the terrorism premium and whether it breached contractual duties to insureds. [Dkt. 1-1 ¶ 65.] If the class's contracts included materially identical terms and Hastings acted similarly with respect to all class members, common questions of law or fact will arise and may predominate over individual questions. Fed. R. Civ. P. 23(a)(2), (b)(3). If Hastings systematically overcharged the class in a similar manner, liability may be able to be proven on a classwide basis, a question that could predominate over individualized liability findings. [*See* Dkt. 26 at 12.] True, damages might need to be assessed individually, but that does not preclude class certification in general or in this context. *See Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 800 (7th Cir. 2013) ("[A] class action limited to determining liability on a class-wide basis, with separate hearings to determine—if liability is established—the damages of individual class members, or homogeneous groups of class members, is permitted by Rule 23(c)(4) and will often be the sensible way to proceed." (citations omitted)); *Hydrite Chem. Co. v. Calumet Lubricants Co.*, 47 F.3d 887, 890–91 (7th Cir. 1995) (explaining that liability and damages are distinct issues in contract cases).

Whether Able Masonry's breach of contract claim can proceed on behalf of a class depends on the substance of Hastings' contracts with putative class members.

It may be possible to certify this claim as a class action, so the Court denies Hastings's motion to dismiss Count VIII.[6]

## V. Conclusion

For the foregoing reasons, Brown & Brown's motion to dismiss [Dkt. 20] is denied; Hastings's motion to dismiss [Dkt. 21] is granted in part and denied in part. Counts II, VII, IX, and XIV are dismissed with prejudice pursuant to Able Masonry's abandonment of them. [Dkt. 26 at 2 n.1.] All other claims stand.

Enter: 24-cv-1338
Date: May 16, 2024

_____
Lindsay C. Jenkins
United States District Judge

---

[6] Able Masonry addresses whether striking class allegations is proper [Dkt. 26 at 8–9], but Hastings did not move to strike. [*See* Dkt. 21.] The Court observes, however, that the class definitions are improper insofar as they define the class to include "[a]ll persons … who … were overcharged on the 'terrorism premium' … by Hastings." [Dkt. 1-1 ¶¶ 60–61.] "[C]lasses that are defined in terms of success on the merits—so-called 'fail-safe classes'— also are not properly defined." *Mullins v. Direct Digit., LLC*, 795 F.3d 654, 660 (7th Cir. 2015) (citations omitted). The Court will not require Able Masonry to amend its class definitions at this stage, but by no later than the class certification stage, it must "define the class[es] so that membership does not depend on the liability of the defendant." *Id.*